861 So.2d 657 (2003)
STATE of Louisiana
v.
Davin BLANCHARD.
No. 03-KA-0612.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 2003.
*659 Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Thomas Block, Assistant District Attorneys, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Davidson S. Ehle, III, Gretna, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
SOL GOTHARD, Judge.
Defendant, Davin Blanchard, pled guilty to one count of driving while intoxicated (DWI) third offense, a violation of La. R.S. 14:98(D), and one count of first degree vehicular negligent injuring in violation of La. R.S. 14:39.2.
Thereafter, the trial court sentenced defendant to four years of imprisonment at hard labor on Count 1 (DWI-third offense), *660 with all but 30 days of the sentence suspended, and the 30 days were ordered to be served without benefit of parole, probation or suspension of sentence. The trial judge also imposed a fine of $2,000.00. The trial court sentenced defendant to five years of imprisonment at hard labor on Count 2 (first degree vehicular negligent injuring), with the sentence on Count 1 to run consecutively to the sentence on Count 2, and he imposed a $2,000.00 fine.
The trial court stated that, upon completion of his sentences, defendant was to be admitted to an inpatient facility for substance abuse for not less than four weeks but no more than six weeks to determine the extent of his substance abuse, all in accordance with the treatment provisions found in La. R.S. 14:98(D)(1)(b) and (c). After completion of the treatment, defendant was ordered to serve the remainder of his time under home incarceration during which time he would be on probation for five years.[1] The trial court also awarded restitution in the amount of $8,192.44. On appeal, defendant challenges his sentences as excessive. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
The PSI states that, on August 8, 2001 at approximately 8:12 a.m., on River Road in Jefferson Parish, defendant's vehicle crossed the lane into on-coming traffic and collided head-on with a vehicle being driven by Christie Foret Poussard, who was eight months pregnant. Testing showed defendant's blood contained 0.24 percent ethyl alcohol, over twice the legal limit. As a result of the accident, Ms. Poussard had to undergo two emergency surgeries, one for the early delivery of her baby, and another for the laceration to her right ankle.
The PSI reflects that defendant had an extensive criminal record: 26 arrests, including 6 DWIs; simple battery; illegal use of a weapon; public intoxication; public urination; simple criminal damage; battery on a police officer; resisting arrest; disturbing the peace (7 times); theft (3 times); and numerous traffic violations (9). The PSI also indicates that four months after the accident, defendant was arrested for failure to yield/stop and no driver's license.
Defendant stated in the PSI that he had never married, although he has been involved in a "common-law" relationship for the past 13 years. He had four children, and had maintained employment since he was 13 years old. Defendant said he had a problem with drugs, that he started smoking marijuana during high school, that he started using crack cocaine approximately ten years ago, and that he entered and completed treatment at two 30-day treatment facilities, F. Edward Hebert Hospital when he was 18 years old, and Fountainbleu Hospital when he was 26 years old. After the instant offense, he entered Fountainbleu again, but was asked to leave. He claimed he had been "clean" for the past year and a half. The PSI indicates that defendant was 38 years old at the time of the PSI, and that his date of birth was May 9, 1964.
The following was adduced at the sentencing hearing in this matter.
*661 Eugenia Patru, a clinical and forensic social worker, testified that alcohol addiction was a mental disorder or condition and she recommended an involuntary inpatient treatment program. She admitted that she had not spoken to defendant, nor had she reviewed any information regarding defendant or the instant case.
At the time of sentencing, defendant was employed as a heavy equipment operator, and had been employed by J.C. Trulen the past 18 months. Mr. Trulen stated that defendant worked for him on a part-time basis; showed up when he said he would; did assigned work appropriately; was extremely good at his profession; supported his family; that his family supported him; and that he had a good relationship with his "wife" [common-law relationship]. Mr. Trulen testified that defendant was his friend; that he was a good guy; that the DWI charge did not change his opinion about him; that he would hire defendant if he were released from jail in the future; and that he was a hard worker. He explained that he never observed defendant drink alcohol or be under the influence of alcohol in the 18 months that defendant worked for him.
Gale Blanchard, defendant's father, testified that he was a recovering alcoholic, and that he became aware of his son's situation when a lady at Charity Hospital called to tell him his son had been in a head-on collision. Mr. Blanchard testified that defendant was injured in that collision and sustained a torn spleen, a tear in his intestines, a collapsed lung, and that he was in and out of consciousness. Mr. Blanchard said that while his son was at the hospital for 19 days he suffered from alcohol withdrawal.
Mr. Blanchard stated that, since the accident, his son was a changed man, and that he was now a loving father to his children. He explained that if the judge gave his son probation, that he would assist him by getting him to and from a treatment facility, that he would help his son financially to get him into an inpatient facility and to pay the victim's medical bills and restitution.
Defendant testified that he worked for Mr. Trulen, and that he started working for him right after the accident. He explained that he had pled guilty to the DWI in this case and that he had been convicted in two previous DWI cases. Defendant admitted being addicted to alcohol. He testified that he had been drinking since he was 15 years old, that his life was unmanageable, and that after this accident he had "seen the light" and did not have the feeling to drink anymore.
Defendant further testified that he desired rehabilitation, and that he would be willing to go to a locked-down type of facility for an extended period of time. He apologized to the victim, and stated that he was willing to pay her restitution for out-of-pocket expenses. Defendant testified that he would be willing to sign an income assignment in her favor. He explained that he was willing and able to take on any type of employment once released.
On cross-examination, defendant admitted that he continued to drink and drive even after his first two convictions for DWI. He testified that, on August 8, 2001, he had been drinking a lot, and admitted that the victim would suffer for the rest of her life with injuries he had caused. Defendant further testified that, after the accident that he considered his life-altering moment, he drove again without a driver's license.
In sentencing the defendant, the trial judge stated that the PSI indicated that defendant said he must have blacked out at the time of the accident, but did not know why; that he could not have been *662 that drunk because he made it to his friend's house without incident; that he did not "buy into that rehabilitation;" and that, although he was given opportunities, defendant said that he made some of the meetings, but because of work did not go to all of the meetings. The trial judge pointed out that defendant did not ever express an interest in talking with the expert retained by defense counsel, and that healing would not take place unless defendant decided that it would take place.
The trial judge looked at the evidence to determine whether healing or change had taken place. He noted that, since defendant's arrest in this case, defendant went back out onto the roadway and operated a vehicle in full violation of the law. The trial judge stated that defendant had continued to exercise poor judgment throughout his life and that, although defendant's employer said defendant was not drinking any longer, it was not unusual for people who have pending cases to stop drinking until sentencing takes place.
The trial judge further said that, based on defendant's history, defendant had not learned any lessons. He explained that he had the responsibility to insure that justice was administered. He noted that the pregnant victim was driving on the roadway when defendant, who blacked out, struck her head on. The trial judge stated that, fortunately, the child and the adult victim survived. He said that the indication was that defendant could not be trusted; that he was a danger not only to himself but this community; that defendant had not learned his lesson yet; that he had a propensity to not obey the law and, therefore, he was not amenable to probation because in the past he had "thumbed his nose at it." The trial judge stated in pertinent part:
The Court finds based upon the record before it the defendant has been convicted now of two additional felonies; that he is not amenable to probation; that he is in need of correctional treatment and a custodial environment; that any lessor [sic] sentence than which I will impose would depreciate the seriousness of the defendant's conduct; that he created a risk of death or great bodily harm to the victim in this case; that as a result of his and his alone conduct, the victim has been permanently disabled and has been deprived of bringing her child into this world in a manner in which women desire and that is through natural birth; that his conduct has resulted in significant permanent injury to the victim in this case.
The trial judge subsequently sentenced defendant on both counts. Defense counsel objected, and subsequently filed a motion for reconsideration of sentence and an appeal.
In his first allegation of error, defendant argues that the trial court erred in imposing the maximum sentence of five years at hard labor on the first degree vehicular negligent injuring conviction. He claims that he is not one of the worst offenders within the criminal justice system, and that he did not have a felony conviction record before the instant case. Defendant contends that the sentence is simply unfair and disproportionate to the crime committed. In allegation of error number six, defendant alleges that the trial court erred in denying his motion to reconsider sentence, based on the same allegations that his sentence is excessive.
The Eighth Amendment of the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is generally considered to be excessive if it is grossly disproportionate to the offense or imposes *663 needless pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Williams, 98-1146 (La.App. 5 Cir. 6/1/99), 738 So.2d 640, 655, writ denied, 99-1984 (La.1/7/00), 752 So.2d 176.
Three factors are considered in reviewing a trial court's sentencing discretion: 1) the nature of the crime; 2) the nature and background of the offender; and, 3) the sentence imposed for similar crimes by the same court and other courts. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id. at 64.
Prior criminal activity is one of the factors to be considered by the trial judge in sentencing a defendant. Prior criminal activity is not limited to convictions. State v. Washington, 414 So.2d 313, 315 (La. 1982); State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1219.
Defendant was convicted of first degree vehicular negligent injuring in violation of La. R.S. 14:39.2 which provides in pertinent part: "Whoever commits the crime of first degree vehicular negligent injuring shall be fined not more than two thousand dollars or imprisoned with or without hard labor for not more than five years, or both."
In the instant case, the record clearly shows that defendant's five-year sentence for first degree vehicular negligent injuring was not excessive. The record indicates that defendant has an extensive criminal record, including numerous alcohol and driving related incidents: 26 arrests, including 6 DWI charges; simple battery; illegal use of a weapon; simple criminal damage; battery on a police officer; resisting arrest; disturbing the peace; theft; and many traffic violations. He was arrested approximately four months after the instant offense for failing to yield or stop and driving without a driver's license.
Defendant admitted to being an alcoholic and to using marijuana since high school and crack cocaine for the past ten years. He admitted he was drinking alcohol on the night of the accident; however, he refused to take responsibility for his actions, saying that he blacked out and could not have been that drunk because he made it to his friend's house without incident. Although he attended two in-patient treatment facilities, it is clear that they were not beneficial. It appears that defendant has had many opportunities to change his behavior; however, he has chosen not to do so.
Defendant has caused enormous pain and suffering to the victim, Ms. Poussard, a single mother of three, who will be permanently disabled for the rest of her life and walk with a limp. Additionally, Ms. Poussard was forced to have her baby delivered by C-section one month early. As the trial judge correctly stated, defendant is a danger to himself and to the community, he has not yet learned his lesson, and he has a propensity not to obey the law. We find no abuse of discretion by the trial court in the length of defendant's sentence, and no abuse in denying defendant's motion for new trial.
In his second allegation of error, defendant argues that the trial court erred in ordering consecutive sentences. He contends that successful methods of treatment for his addiction to alcohol are not available to him in a timely manner because of the consecutive sentence imposed. *664 Defendant claims this is contrary to the legislature's intent to embrace treatment measures in preference to incarceration.
The consecutive or concurrent nature of a sentence is governed by La.C.Cr.P. art. 883 which provides in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
Since the two convictions arose from a single course of conduct, there is a presumption in favor of concurrent sentences under Article 883. Nonetheless, a trial judge retains discretion to impose consecutive sentences on the basis of factors such as the offender's past criminal acts, the violent nature of the charged offenses, or the risk that the defendant may pose to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Aleman, 01-743 (La. App. 5 Cir. 1/15/02), 809 So.2d 1056, 1070, writ denied, 02-481 (La.3/14/03), 839 So.2d 26. If the trial court elects to impose consecutive sentences for crimes arising from a single course of conduct, it must articulate the reasons it feels the sentence is necessary. State v. Aleman, 809 So.2d at 1070. Although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, 451, writs denied, 97-1050 (La.10/13/97), 703 So.2d 609 and 97-1255 (La.10/13/97), 703 So.2d 612. The failure to articulate specific reasons for imposing a consecutive sentence also does not require a remand if the record provides an adequate factual basis to support a consecutive sentence. State v. Bradley, 02-1130 (La.App. 5 Cir. 3/11/03), 844 So.2d 115, 118.
In the instant case, the trial court failed to give any reasons justifying the consecutive nature of the sentence. However, the record provides adequate facts to support a consecutive sentence. As was stated in the discussion under his first allegation of error, defendant has an extensive criminal record, including numerous alcohol and driving related offenses. The facts surrounding the offense show that defendant put the lives of Ms. Poussard and her unborn child at risk, and that Ms. Poussard was permanently disabled as a result of the accident. The facts also suggest that defendant is a danger to himself and to society, that he has not taken advantage of treatment options available to him previously, and that he has not learned from his mistakes. The need for rehabilitation must be balanced against these other factors. Additionally, treatment options will be available to defendant after he serves his sentence. We find that the trial court did not err in ordering the DWI, third offense, sentence to run consecutively to the first degree vehicular negligent injuring sentence.
In his third allegation of error, defendant argues that the trial court erred in ordering home incarceration for the period of time remaining on his sentence. He claims that, under the ordered sentence, he would have to remain on home incarceration for more than two years in violation of La.C.Cr.P. art. 894.2(G). The State responds that the trial court correctly ordered home incarceration in accordance with La.C.Cr.P. art. 894.2(K).
Defendant was convicted of DWI, third offense, a violation of La. R.S. 14:98 and *665 first degree vehicular negligent injuring, a violation of La. R.S. 14:39.2. The trial court sentenced him to four years of imprisonment at hard labor on Count 1 (DWI-third offense), with all but 30 days of the sentence suspended, and the 30 days were ordered to be served without benefit of parole, probation or suspension of sentence and a fine of $2,000.00 was also imposed.
The trial court sentenced defendant to five years of imprisonment at hard labor on Count 2 (first degree vehicular negligent injuring), with the sentence on Count 1 to run consecutively to the sentence on Count 2, and he imposed a $2,000.00 fine.
The trial court stated that, upon completion of his prison service, defendant was to be admitted to an inpatient facility for substance abuse for not less than four weeks but no more than six weeks to determine the extent of his substance abuse, and that an additional period of up to 12 months might be required if the treating physician so indicated. After completion of treatment, defendant was ordered to serve the remainder of his time under home incarceration during which time he would be on probation for five years.[2]
At the time defendant was convicted, La. R.S. 14:98[3] provided as follows:
D. (1)(a) On a conviction of a third offense, notwithstanding any other provision of law to the contrary and regardless of whether the offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than one year nor more than five years and shall be fined two thousand dollars. Thirty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The remainder of the sentence of imprisonment shall be suspended and the offender shall be required to undergo an evaluation to determine the nature and extent of the offender's substance abuse disorder.
* * *
(d) Upon successful completion of the inpatient substance abuse treatment required by this Paragraph, the offender shall be sentenced to home incarceration for not less than the period of time remaining on the offender's suspended sentence as provided in Paragraph (3) of this Subsection.
* * *
(3)(c) Offenders sentenced to home incarceration required under the provisions of this Section shall be subject to all other applicable provisions of Code of Criminal Procedure Article 894.2.
La.C.Cr.P. art. 894.2 provides as follows:

*666 G. The sentence of home incarceration shall be for a period of not more than two years in felony cases and for a period not to exceed six months in misdemeanor cases.
* * *
K. Paragraphs A and G of this Article shall not apply to a defendant who has been convicted of any third or subsequent violation of any state law or local ordinance prohibiting driving while intoxicated committed within five years of the commission of any prior driving while intoxicated violation. Such defendants shall be subject to home incarceration as provided for in R.S. 14:98.
In the instant case, defendant was convicted of DWI, third offense, on October 28, 2002, which was within five years of the commission of two of his prior DWIs: May 18, 2001 and May 29, 1998. We therefore find that the trial court properly imposed home incarceration in accordance with La. C.Cr.P. art. 894.2(K) and La. R.S. 14:98(D)(1)(d). See also, State v. Isidore, 02-1121 (La.App. 5 Cir. 4/29/03), 845 So.2d 1123, 1127.
In his fourth allegation of error, defendant argues that the trial court erred in ordering $8,192.44 in restitution in violation of La.C.Cr.P. art. 895.1. He contends that the victim should only be awarded restitution for her pre-paid or out-of-pocket expenses which were $58.02 for a wheelchair and $211.14 for foot inserts.
The State responds that there were several statutory vehicles available to the court to accomplish the objective of restitution, including La. R.S. 46:1844 and La. C.Cr.P. arts. 883.2, 895, and 895.1. Alternatively, the State contends that any ambiguity should be resolved by remand to the trial court so the trial judge can re-examine his findings.
At the restitution hearing, Christy Poussard testified that she missed 63 days of work as a result of this crime, and that her total lost wages was $6,335.28. Ms. Poussard testified that she was forced to rely upon her mother, Carmen Trahan Poussard, to take care of her "24/7" for at least two weeks, because she had just had a baby and because of the injuries she sustained in the accident.
She further testified that her mother missed 104 hours of work in order to care for her, and that her mother's lost wages was $1,290.64.
Ms. Poussard also incurred expenses of $58.02 for a wheelchair, $60.00 for a nurse for one month, and $211.14 for foot inserts.
Ms. Poussard testified that she got a bill for $25,763.50 for her hospital care; her insurance paid these expenses except for $450.00 which was her out-of-pocket expense. For the baby, the total charges were $5,855.70 which the insurance paid except for $430.00 which was her co-payment. Co-payments for follow-up visits were $165.00, and co-payments for physical therapy were $135.00.
Ms. Poussard explained that she was currently working, and lost wages for her court appearances totaled $116.00. Further she incurred expenses for approximately $6.00 in gas for the court appearances.
She further testified that her only out-of-pocket expenses as of the hearing date were $211.14 for the inserts and $60.00 for the wheelchair, but that she was being billed for the remainder of the expenses.
At the hearing, defense counsel argued that La.C.Cr.P. art. 895 only compensates a victim for direct loss of actual cash, and that the victim testified that her out-of-pocket expenses were approximately $60.00 for the wheelchair and $211.14 for *667 the inserts. Defense counsel admitted that Article 895 only dealt with probation, and that defendant was not placed on probation.
At the conclusion of the hearing, the trial judge explained that all the expenses resulted from the conduct of defendant in operating a motor vehicle while intoxicated and in causing injuries to the victim which rendered her permanently disabled. The trial judge said that he could not award restitution to her mother because the statute did not allow the victim of the crime to make a claim on behalf of other parties who were not victims themselves. The trial judge stated that the total restitution was $8,192.44.
The trial judge imposed restitution in accordance with La. R.S. 46:1844 which provides in pertinent part:
(1) If the defendant is found guilty, the court or parole board shall require the defendant to pay restitution to the appropriate party in an amount and manner determined by the court. In addition, the court or parole board may require the defendant to perform community service work in an amount and according to a schedule determined by the court.
(2) One of the conditions of work release shall be a requirement that an inmate pay from his earnings all restitution ordered by the court or the parole board. Even if no restitution has been ordered, the sheriff or director of the program shall have the right to require payment of restitution as a condition of work release.
In State v. Lam, 36,862 (La.App. 2 Cir. 2/11/03), 837 So.2d 749, 758, the court stated:
Before August 15, 1999[4], the collection of restitution from a defendant had to be accomplished in the criminal courts as a condition of probation pursuant to either La.C.Cr.P. art. 895.A(7) or La. C.Cr.P. art. 895.1.A, which meant that at least some portion of the sentence itself was suspended. Effective August 15, 1999, La.C.Cr.P. art. 883.2 now allows restitution to be implemented as a part of the sentence itself, without need of probationary conditions.
La.C.Cr.P. art. 883.2 provides as follows:
In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.
La.C.Cr.P. art. 895 provides as follows:
A. When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
....
(7) Make reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in *668 an amount to be determined by the court[.]
La.C.Cr.P. art. 895.1 provides in pertinent part:
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.
....
B. When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following:
....
(5) To the victim to compensate him for his loss and inconvenience. Such an amount may be in addition to any amounts ordered to be paid by the defendant under Paragraph A herein.
Courts apparently have wide discretion regarding the imposition of restitution when it is reasonably related to defendant's rehabilitation. State v. Alleman, 439 So.2d 418 (La.1983). In State v. Schmidt, 558 So.2d 255, 257 (La.App. 5 Cir.1990), this Court noted:
The jurisprudence has established that restitution is not limited to only those actual pecuniary losses sustained by the victim or his family. State v. Elkins, 489 So.2d 232 (La.1986); State v. Alleman, 439 So.2d 418 (La.1983); State v. Olsen, 496 So.2d 1260 (La.App. 1 Cir. 1986).
In ordering restitution the trial judge has discretion and his decision will not be disturbed absent an abuse of this discretion. State v. Peters, 611 So.2d 191, 192 (La.App. 5 Cir.1992). In reviewing excessive sentence assignments, the sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion. State v. Lobato, 603 So.2d 739, 751 (La.1992).
We find that the trial judge did not err in ordering restitution of $8,192.44. La. R.S. 46:1844(M) permits the trial judge to award restitution in an amount and manner to be determined by the court. Ms. Poussard testified that, as a result of injuries she sustained in the accident caused by defendant, she was forced to obtain medical treatment and to miss work, among other things. Although she only paid $271.14 of her medical expenses, she explained that she and her employer, Ochsner Hospital, had reached an agreement where she would not have to pay her bills until she received restitution from defendant. Her testimony was not contradicted. Further, defendant cites no jurisprudence which requires that expenses must be pre-paid or lost wages cannot be awarded, and no jurisprudence could be located.
We find defendant's allegation that the trial court erred in imposing restitution of $8,192.44 to be without merit.
In his fifth allegation of error, defendant argues that the trial court erred by failing to consider mitigating factors in violation of La.C.Cr.P. art. 894.1 and in denying his motion to reconsider sentence.
*669 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688, 698 (La.1983). The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049, 1051 (La.1981). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
In the instant case, although the trial judge did not specifically state that he considered mitigating factors, he did state that he considered the provisions of La. C.Cr.P. art. 894.1 along with all of the evidence, the arguments of counsel, the victim impact statement, the testimony of the witnesses at the sentencing hearing, and the PSI, among other things. The trial judge explained at length the reasons for sentencing. Further, the record shows that the trial judge adequately considered the guidelines of the article, and that there was an adequate factual basis for the sentence imposed.
We find no merit to this allegation of error.
We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find that the transcript does not reflect that the trial judge adequately advised defendant of the two-year prescriptive period for seeking post-conviction relief pursuant to La. C.Cr.P. art. 930.8. Accordingly, we remand this case and order the trial judge to send written notice to the defendant of the prescriptive period, along with a notice of when the period begins to run, within ten days of the rendering of this opinion, and then to file written proof in the record that the defendant received the notice. See, State v. Esteen, 01-879 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 78, writ denied, 02-1540 (La.12/13/02), 831 So.2d 983.
CONVICTIONS AND SENTENCES AFFIRMED; CASE REMANDED.
NOTES
[1] In addition to all general conditions of probation, the following special conditions of probation were imposed: court costs; supervision fee; seizure and sale of vehicle defendant was driving at time of offense; installation of a functioning interlock device on any vehicle operated by defendant pursuant to LSA-R.S. 15:306; enrollment in driving improvement classes; and restitution. The trial court also ordered defendant to comply with all of the other conditions of probation as set forth in the probation form for a felony.
[2] In addition to all general conditions of probation, the following special conditions of probation were imposed: court costs; seizure and sale of vehicle defendant was driving at time of offense; installation of a functioning interlock device on any vehicle operated by defendant; enrollment in driving improvement classes; and restitution. The trial court also ordered defendant to comply with all of the other conditions of probation as set forth in the probation form for a felony.
[3] La. R.S. 14:98 was amended by 2001 La. Acts 1163, with an effective date of August 15, 2001. Although defendant in the instant case committed the offenses on August 8, 2001, before the effective date of the statute, and was convicted on October 28, 2002, after the effective date of the statute, the Louisiana Supreme Court found that the statutory language and legislative purpose of the enactment indicated the applicable sentencing statute to be applied was the one in effect at the time of conviction, rather than at the time of the offense. State v. Mayeux, 01-3195, p. 2 (La.6/21/02), 820 So.2d 526.
[4] Note that, in State v. McDonald, 33, 356 (La. App. 2 Cir. 6/21/00), 766 So.2d 591, 595, the court stated that the effective date of the article was August 15, 1999. The official Louisiana Acts indicates that the article was effective on January 1, 2000. (Acts 1999, No. 783, § 3; Acts 1999, No. 988, § 1). For purposes of this case, it is irrelevant whether the effective date was August 15, 1999 or January 1, 2000 because defendant committed the instant offenses on August 8, 2001 after both effective dates. Thus, the new statute, LSA-C.Cr.P. art. 883.2, is applicable to him.