STATE OF LOUISIANA

VERSUS

JULIUS HANKTON

NO. 20-KA-388

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 15-1798, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

July 03, 2021

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and John J. Molaison, Jr.

**SENTENCES ON COUNTS ONE, TWO, THREE, FOUR, AND SIX**
**AFFIRMED; SENTENCE ON COUNT FIVE VACATED; CASE**
**REMANDED**
    **SJW**
    **JJM**

**DISSENTS WITH REASONS**
    **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Nancy J. Vega
Chief Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
      Honorable Paul D. Connick, Jr.
      Thomas J. Butler
      Andrea F. Long
      Seth W. Shute
      Douglas E. Rushton
      Lynn Schiffman

COUNSEL FOR DEFENDANT/APPELLANT,
JULIUS HANKTON
      Bruce G. Whittaker

**WINDHORST, J.**

Defendant/Appellant, Julius Hankton, seeks review of his sentences imposed on remand. For the following reasons, we affirm defendant's sentences on counts one, two, three, four, and six, but vacate defendant's sentence on count five, and remand this matter for further proceedings on count five.

**FACTS and PROCEDURAL HISTORY [1]**

On May 1, 2015, the Jefferson Parish District Attorney filed a bill of information charging Hankton with one count of possession with intent to distribute heroin in violation of La. R.S. 40:966(A) (count one), four counts of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (counts two, three, five, and six), and one count of possession of Oxycodone, in violation of La. R.S. 40:967(C) (count four). The six separate counts for which defendant was charged all arose out of a single search warrant executed on March 19, 2015 at defendant's residence located in Metairie, Louisiana during which law enforcement seized a significant amount of heroin packaged for sale, drug paraphernalia, multiple cell phones, a large amount of cash, and four guns. Defendant pled not guilty to all counts.

Trial commenced before a twelve-person jury on January 18, 2017 and revealed the following. Gregory Morrow, a recovering heroin addict, testified that in 2014 he was working with the Federal Bureau of Investigations (FBI) as a confidential informant. While working with the FBI, Morrow purchased heroin from defendant, who he knew as "Ju," on November 7 and 19, 2014, and on December 5, 2014, in quantities of one-half to one gram for approximately $50 to $100.

---

[1] This opinion replaces and supersedes a document mistakenly issued on June 9, 2021 as an opinion. The June 9, 2021 document was recalled and is of no effect whatsoever.

A video of the November 7, 2014 drug transaction between defendant and Morrow was played for the jury. On the video, a vehicle driven by defendant was shown pulling up to Morrow's vehicle where the passenger of defendant's vehicle then handed Morrow a gram of heroin in exchange for $100. A second purchase made by Morrow on November 19, 2014, from defendant was for half a gram of heroin and was also recorded on video; however, Morrow testified that the video did not capture defendant, who had given him the heroin and was out of sight of the surveillance camera. On December 5, 2014, Morrow made a third purchase of heroin from defendant near the Brother Martin football field. This third sale was not captured on video because Morrow was instructed by defendant to exit his vehicle and enter defendant's vehicle, where defendant sold him the heroin out of the visual field of the surveillance camera positioned in Morrow's vehicle.

Stacey Taranto of the Jefferson Parish Sheriff's Office testified that in 2014 and 2015 she was a member of the narcotics unit working as a Task Force Officer with the FBI. She explained that she conducted surveillance of the controlled buys about which Morrow had testified, and that in March of 2015, she participated in the execution of a search warrant at defendant's residence in Metairie, Louisiana.

Officer Taranto testified that during the November 19, 2014 controlled buy, she observed a silver BMW pull into the meeting location set up between defendant and Morrow. She then observed a black male, wearing a black sweatshirt with "O-B-E-Y" written on it, exit the vehicle he was driving and conduct a hand-to-hand drug transaction with Morrow. She further testified that during her surveillance of the drug transactions conducted on November 19, 2014 and December 5, 2014, she was able to obtain the license plate numbers from the vehicles driven by defendant and discovered that the vehicle used in November was registered to a female named Jasmine Chaney (defendant's girlfriend), who resided in Metairie, Louisiana. Further, the vehicle used in December 2014 was a rental car which had been rented

under the name Jasmine Chaney. Officer Taranto testified that she performed a traffic stop of the vehicle following the December 5, 2014 drug transaction and confirmed defendant as the driver of the vehicle. A search of the vehicle driven by defendant revealed a black sweatshirt with "O-B-E-Y" written on the front, a cell phone, and two small bags of heroin.

Special Agent Christopher Bauer of the New Orleans Division of the FBI and member of the Violent Crimes Task Force participated in the controlled buy on November 19, 2014, during which he observed a silver BMW pull into the parking lot at the meeting location alongside Morrow's vehicle. He then observed a black male wearing a sweatshirt with "O-B-E-Y" written across the front exit the BMW and interact with Morrow. Special Agent Bauer also confirmed his participation in the stop of defendant's vehicle after the December 2014 controlled buy. Special Agent Bauer indicated that defendant was arrested at the time of the stop, but was subsequently released.

Special Agent Bauer testified that subsequent to defendant's release, a warrant was obtained for the search of defendant's apartment. During the execution of the search warrant, defendant was detained, and was found to have 26 small plastic baggies containing heroin and eight pills that tested positive for Oxycodone in his pants. Additionally, a Glock 17, Glock 29, Glock 21, an AK-47 rifle, ammunition, multiple cell phones, a scale, and over $20,000 in cash were seized during the search of the master bedroom in which defendant's pants were located. Upon discovery of the evidence, defendant admitted his ownership of "all the stuff in the house."

FBI Special Agent Crystal Bender, also of the New Orleans Violent Crimes Task Force, likewise testified regarding the various monitored phone conversations between Morrow and defendant during which the narcotics transactions were arranged, as well as the monitored video recordings of the controlled buys that took place. Agent Bender explained that surveillance of the Metairie apartment was also

conducted during which defendant was seen entering and exiting the residence. At one time, defendant was seen exiting the apartment, approaching the driver of a white sedan, leaning inside the vehicle, and retreating back into the apartment after a couple of seconds.

Agent Bender further testified regarding a controlled buy between defendant and an unnamed confidential informant on May 8, 2014, which was recorded on video surveillance and played for the jury. Agent Bender identified defendant from the video and confirmed that in exchange for $100, the confidential informant received .31 grams of heroin. She explained that the quantity received was less than the amount paid. A recorded phone conversation between defendant and the confidential informant was played during which defendant explained that the reason it was "short" was because it was "bricked up," meaning it had been cut off of a "solid piece."

Sergeant Joshua Collins, an expert in the field of quantity, packaging, pricing, and distribution of narcotics, testified that the 26 bags of heroin individually packaged within a larger plastic bag weighing approximately 21 grams, the $20,000, and the scale all found in defendant's apartment are indicative of street-level distribution.

A stipulation was accepted by the parties that Sergeant Joel O'Lear, an expert in fingerprint examination and comparison, if called as a witness, would testify that defendant's fingerprints were those contained on the certified conviction packets, establishing the prior felonies as alleged in counts two, three, five, and six.

The jury found defendant guilty as charged. The trial court sentenced defendant on count one, to 50 years imprisonment at hard labor, with the first ten years to be served without benefit of probation, parole, or suspension of sentence; on each of counts two, three, five, and six, to 20 years imprisonment at hard labor to be served without benefit of probation, parole, or suspension of sentence; and on

count four, to two years imprisonment at hard labor. The trial court further ordered defendant's sentences on all counts to be served consecutively to each other.

On July 19, 2017, defendant filed a motion for out-of-time appeal, which was granted by the trial court on July 24, 2017. On appeal, this Court affirmed defendant's convictions on all six counts. This Court affirmed the term of the sentences imposed on each count, but vacated the consecutive nature of the sentences, and amended the sentences by ordering that the sentences on each count be served concurrently. State v. Hankton, 17-628 (La. App. 5 Cir. 7/31/18), 251 So.3d 1234, 1237, 1240, writ granted in part, 18-1457 (La. 5/20/19), 270 So.3d 569. This Court also amended the sentence on count one to delete the parole restriction, and as amended, affirmed all the sentences. Id.

On appeal to the Louisiana Supreme Court, the Court granted defendant's writ in part, reversing the court of appeal's decision only in that it amended the sentences, and affirmed as amended. State v. Hankton, 18-1457 (La. 5/20/19), 270 So.3d 569. The Supreme Court vacated defendant's sentences and remanded the case to the trial court for resentencing. Id. On remand, the Supreme Court ordered the trial court "to resentence defendant to a punishment that is not unconstitutionally excessive and to articulate its reasons for the sentences imposed, including as to whether some or all of the sentences should be served consecutively." Id.

On remand, the trial court resentenced defendant on count one to 50 years imprisonment at hard labor, with the first 10 years to be served without benefit of probation or suspension of sentence (count one); on counts two, three, five, and six to 20 years imprisonment at hard labor to be served without benefit of probation, parole, or suspension of sentence; and on count four to 2 years imprisonment. The trial court ordered defendant's sentences on counts one, two, three, five, and six to be served consecutively and count four to be served concurrently. These sentences are substantially the same as the initial sentence, except that the sentence for

possession of Oxycodone is 2 years instead of 4 years as in the initial sentence. Defense counsel objected to the sentence and filed a motion for reconsideration, but the motion was denied. This appeal followed.

**LAW and ANALYSIS**

In the instant appeal, post-resentencing, defendant asserts that the trial court imposed an unconstitutionally excessive sentence. Defendant asserts that his sentence of 130 years of imprisonment is unconstitutionally excessive because the trial court imposed near maximum available sentences on each count and ordered them to be served consecutively constituting needless and purposeless pain and suffering. He argues that the trial court failed to justify ordering that sentences be served consecutively under La. C.Cr.P. art. 883. He notes that he was 25 years old at the time he committed the instant crimes, is a father of a young child, and that his crimes are non-violent offenses. He further notes that this Court previously stated, "The record contains scant evidence to support a finding that this case involved the most serious violation of the offenses and the worst type of offender," citing State v. Hankton, 251 So.3d at 1247.

The State responds that the trial court did not abuse its broad sentencing discretion and that the record supports the imposition of consecutive sentences in five of the six counts. Below, we address whether the consecutive nature of defendant's sentence constitutes an excessive sentence.[2]

<u>Error Patent in Sentencing</u>

Ordinarily, we reserve discussion of errors patent until the end of an opinion, but in this case it is logically discussed first. We reviewed the record for errors patent pursuant to the mandates of La. C.Cr.P. art. 920; <u>State v. Oliveaux</u>, 312 So.2d

---

[2] Because defendant's appeal focuses on the consecutive nature of his sentences, and this Court previously considered and affirmed each of defendant's individual sentences, we do not believe it is necessary to address whether each individual sentence is excessive herein. <u>Hankton</u>, *supra.*

337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990), and for the following reasons, we find an error in the sentencing on count five.

Although the commitment minute entry and the Uniform Commitment Order (UCO) indicate separate sentences on each count, the transcript from defendant's sentencing indicates otherwise for count five. The trial court must impose a separate sentence for each separate count on which a defendant is convicted. See La. C.Cr.P. art. 883; State v. Hebert, 02-1252 (La. App. 5 Cir. 4/8/03), 846 So.2d 60, 66. State v. Narcisse, 01–49 (La. App. 5 Cir. 6/27/01), 791 So.2d 149, 155, writ denied, 01–2231 (La. 6/14/02), 817 So.2d 1152. Patent sentencing error occurs when a trial court, in sentencing for multiple counts, does not impose a separate sentence for each count. State v. Joseph, 96-187 (La. App. 5 Cir. 11/14/96), 685 So.2d 237, 248, writ granted in part and remanded, 96-2998 (La. 5/9/97), 693 So.2d 782.

When initially sentencing defendant on the four counts of felon in possession of a firearm, the trial court mistakenly referred to count four, which is for the possession of oxycodone, instead of count five. The sentencing transcript indicates that the trial court sentenced defendant as follows:

> Counts two, three, four, and six. I will sentence you to twenty years at hard labor, Department of Corrections; that's to be without benefit of probation and parole, or suspension of sentence.
>
> Counts two, three, four, and six are to be run consecutive.
>
> Count four—I'm sorry, I might have got that wrong.
>
> I'm sorry, it's count two, three, five, and six, are to be run consecutive. Those are the felon in possession of a firearm.
>
> Count four is the possession of Oxycodone, Percocet.
> I'll sentence you to four years at hard labor, Department of Corrections. I will run that concurrent.
>
> As I state, counts one, two, three, five, and six, are to be run consecutive to each other. Count four will be concurrent.

Based on the above, we find the transcript reflects that the trial court intended defendant's four counts of felon in possession of a firearm to receive the same

sentence, which was twenty years at hard labor without the benefit of parole, probation, or suspension of sentence. Specifically, we find that the trial court's statements that counts two, three, five, and six were to run consecutive reflect that separate sentences were imposed for the felon in a possession of firearm counts.

However, while imposing the 20-year sentences on the felon in a possession of a firearm counts, the trial court erroneously referred to count four, instead of count five. Immediately noticing the oversight, the trial court made clear that count five—not count four—was one of the counts to be served consecutively, but the court did not actually sentence defendant on count five. As a result, we must vacate the sentence on count five reflected in the commitment minute entry and the UCO, and remand this matter for further proceedings on count five.

Excessiveness of the Remaining Sentences

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Dixon, 18-79 (La. App. 5 Cir. 8/29/18), 254 So.3d 828, 836, writ not considered, 18-1909 (La. 2/18/19), 263 So.3d 1154, and writ denied, 18-1909 (La. 4/8/19), 267 So.3d 606. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id.

A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Dufrene, 12-716 (La. App. 5 Cir. 4/10/13), 115 So.3d 22, 26. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Pearson, 07-332 (La. App. 5 Cir.

12/27/07), 975 So.2d 646, 656. The appellate court will not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4 D.

In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. Courts also consider whether the convictions arise out of a single course of criminal conduct. State v. Ortego, 382 So.2d 921 (La. 1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all shall be served consecutively. La. C.Cr.P. art. 883.

A trial judge retains discretion to impose consecutive sentences on the basis of factors such as the offender's past criminal acts, the violent nature of the charged offenses, or the risk that the defendant may pose to the safety of the community. State v. Baham, 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 571-72, writ denied, 15-40 (La. 3/24/16), 190 So.3d 1189. If the trial court elects to impose consecutive sentences for crimes arising from a single course of conduct, it must articulate the reasons it feels the sentence is necessary. Id. Although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. Id. The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. State v. Blanchard, 03-612 (La. App. 5 Cir. 11/12/03), 861 So.2d 657, 664.

In determining a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. State v. Arceneaux, 19-472 (La. App. 5 Cir. 1/29/20), 290 So.3d 313, 316,

writ denied, 20-324 (La. 5/14/20), 296 So.3d 608. The sentencing court may rely on sources of information usually excluded from the courtroom at the trial of guilt or innocence, *e.g.*, hearsay and arrests, and conviction records. State v. Myles, 94-217 (La. 6/3/94), 638 So.2d 218, 219. These matters may be considered even in the absence of a proof the defendant committed the other offense. Arceneaux, 290 So.3d at 316.

We recognize that this Court previously found defendant's initial 132-year sentence resulting from consecutive sentences unconstitutionally excessive. Further, while La. C.Cr.P. art. 883 provides that the sentencing court need only specifically state that sentences for crimes arising from a single event are to be served consecutively, Louisiana courts have held that the sentencing court must give reasons for consecutive sentences. State v. Baham, *supra*. The Louisiana Supreme Court, after reviewing this case ordered the trial court "to resentence defendant to a punishment that is not unconstitutionally excessive and to articulate its reasons for the sentence imposed, including as to whether some or all of the sentence should be served consecutively." State v. Hankton, 270 So.2d at 569-70. Upon resentencing defendant, the trial court considered the sentencing guidelines of La. C.Cr.P. art. 894.1, including defendant's extensive criminal history, the evidence at trial, defendant's history of distribution of heroin in the community, and that any lesser sentence would deprecate the seriousness of the offenses.

On review of a trial court's reasons or lack of reasons for consecutive sentences for crimes arising from the same transaction, courts of appeal may also consider factors evident from the trial record of the case. See Blanchard, *supra*. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. State v.

Lanclos, 419 So.2d 475 (La. 1982); State v. Hampton, 38,017 (La. App. 2 Cir. 1/28/04), 865 So.2d 284.

Looking to the record, we take into consideration generally the prohibited substances which were sold by defendant; the store of prohibited substances later seized pursuant to a warrant; the amounts and perniciousness of the drugs seized; the facts and expert testimony which show that defendant was engaged in drug dealing as an ongoing business; the alarming number of firearms seized; that defendant's wife and small child were living in his apartment; and the potential for violence and serious harm to the public, including severe injury and homicides.

We further note that while the bill of information charges arose out of a single event, *i.e.*, the execution of the warrant on March 19, 2015, thorough evidence three separate transactions (prior to seizures during execution of the warrant) was introduced at trial showing that defendant sold heroin to undercover agents on separate occasions.

Defendant's criminal record shows that he is a repeat offender and career criminal with a disregard for the law. Defendant has prior 2012 convictions of aggravated battery, illegal possession of stolen firearm, illegal carrying of a firearm, and possession of cocaine. Defendant also has 2017 convictions for manslaughter and possession of heroin. The State indicated that defendant currently had a pending case for three counts of second degree murder in an unrelated matter, and that defendant was arrested for aggravated burglary on March 25, 2008, although those charges were refused. The State further noted that there were other misdemeanor arrests but did not provide specific information.

In addition, the evidence reflects that defendant was a serious drug dealer and engaged in drug-related violence. Louisiana courts have recognized that the legislature's purpose in enacting laws that criminalize possession of a firearm while also possessing a controlled substance was to prevent those engaged in drug use and

distribution from engaging in the violent behavior.  State v. Blanchard, 99-3439 (La. 1/18/01), 776 So.2d 1165, 1168-69.  This statute was enacted not solely for the protection of police officers but also for the protection of the general public.  Id. Evidence at trial established that defendant had eight oxycodone pills, 26 baggies of heroin, a scale, four firearms, and over $20,000 in cash in his apartment in which his girlfriend and their four-year-old child were present.  Defendant's possession of four loaded guns while in possession of a significant quantity of heroin could have conceivably led to a violent outcome or injury to members of the public; thereby, rendering the nature of these offenses far-reaching for sentencing purposes. Defendant's actions also illustrate a disregard for the welfare of others.  State v. Hankton, 251 So.3d at 1244, citing State v. Payne, 10-47 (La. App. 5 Cir. 1/25/11), 59 So.3d 1287, writ denied, 11-387 (La. 9/16/11), 69 So.3d 1141.

Further, the record supports the trial court's reasoning that any lesser sentence would deprecate the seriousness of these offenses, and that there is an undue risk during the period of a suspended sentence or probation the defendant would commit another crime.  The evidence at trial established that defendant had an ongoing drug distribution business involving the sale of heroin for a profit, in quantities inconsistent with personal use.

In State v. Brown, the Louisiana Second Circuit Court of Appeal found that an aggregate sentence of 170 years on convictions for illegal use of a weapon during a crime of violence, three counts of possession of a firearm by a convicted felon, intent to distribute a Schedule II controlled dangerous substance (CDS), and illegal carrying of weapons while in possession of a CDS, which represented maximum sentence for each offense, to be served consecutively, was not excessive, and, thus, did not violate State Constitution.  State v. Brown, 42,188 (La. App. 2 Cir. 9/26/07), 966 So.2d 727, 752-53, writ denied, 07-2199 (La. 4/18/08), 978 So.2d 347.  In that

case, defendant had an extensive criminal history involving crimes of violence and narcotics-related offenses.  Id.  In particular, defendant was adjudicated a third felony offender based on convictions for illegal use of a weapon during a crime of violence and possession of a Schedule II CDS with intent to distribute, and a second felony offender with regard to one of his convictions for possession of a firearm by a convicted felon.  Id.

In light of the foregoing, and the trial court's newly articulated consideration of additional criminal charges pending against defendant, and on further consideration of the record, we cannot say under these facts that defendant's aggregate 110-year sentence is unconstitutionally excessive, or that the trial court abused its sentencing discretion in imposing consecutive sentences in this case.  We conclude that the determination that the sentences on the felon in a possession of a firearm counts (counts one, two, three, and six) be served consecutively was within the sound discretion of the trial court.  Considering the defendant's criminal history, the seriousness of the offenses, the exposure and endangerment of a four-year-old child, and the danger to the public, we conclude that the record supports the trial judge's sentence, and accordingly, we do not find defendant's sentences unconstitutionally excessive.

**DECREE**

For the reasons stated herein, we affirm defendant's sentences on counts one, two, three, four, and six.  We vacate defendant's sentence on count five and remand this matter for further proceedings on count five.

**SENTENCES ON COUNTS ONE, TWO, THREE, FOUR, AND SIX AFFIRMED; SENTENCE ON COUNT FIVE VACATED; CASE REMANDED**

STATE OF LOUISIANA                    NO. 20-KA-388

VERSUS                                FIFTH CIRCUIT

JULIUS HANKTON                        COURT OF APPEAL

                                      STATE OF LOUISIANA


 **WICKER, J. DISSENTS WITH REASONS**

        For the following reasons, I respectfully dissent from the majority's

opinion insofar as it finds that the trial judge did not abuse his discretion

in ordering the sentences for defendant's four convictions for felon in

possession of a firearm in violation of La. R.S. 14:95.1 to be run

consecutively.

        As this Court stated in its first opinion in this case, the record amply

justifies the individual sentences imposed by the trial court and the

individual sentences are not grossly disproportionate to the offenses or

impose needless and purposeless pain and suffering. *State v. Hankton*, 17-

628 (La. App. 5 Cir. 7/31/18), 251 So. 3d 1234, 1245, *writ granted in*

*part, judgment rev'd in part*, 18-1457 (La. 5/20/19), 270 So.3d 569.

However, although the individual sentences are supported, it remains my

position that "the aggregate of the four felon in possession of a firearm

convictions—all arising from the execution of one search warrant and

discovered together at the same time—is constitutionally excessive." *Id;*

*See also State v. Cann*, 471 So.2d 701, 703 (La. 1985) (wherein the

Louisiana Supreme Court found that "although defendant was convicted

of four charges of distribution (one for marijuana and three for cocaine),

each sale involved a relatively small amount of drugs, was separated from the other sales by relatively short periods of time, and was made to the same undercover policeman." The Court determined that although each sentence was supported, it was "the aggregate of the sentences that makes them constitutionally excessive.").

It is my opinion that removing the consecutive nature of defendant's sentences for his felon in possession of a firearm convictions would be "supported by the jurisprudence, meet all of the societal goals of incarceration for Defendant without imposing an undue financial burden on the state, [would be] more proportionate to the crimes committed in the instant case, and will eliminate the "purposeful imposition of pain and suffering" element that is prohibited by the federal and state constitutions." *State v. Hankton*, 251 So.3d at 1248.

Accordingly, for these reasons, I respectfully dissent.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 3, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-KA-388

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          THOMAS J. BUTLER (APPELLEE)

### MAILED

BRUCE G. WHITTAKER (APPELLANT)          HONORABLE PAUL D. CONNICK, JR.
ATTORNEY AT LAW                          DISTRICT ATTORNEY
LOUISIANA APPELLATE PROJECT              DOUGLAS E. RUSHTON (APPELLEE)
1215 PRYTANIA STREET                     LYNN SCHIFFMAN (APPELLEE)
SUITE 332                                SETH W. SHUTE (APPELLEE)
NEW ORLEANS, LA 70130                    ASSISTANT DISTRICT ATTORNEYS
                                         TWENTY-FOURTH JUDICIAL DISTRICT
                                         200 DERBIGNY STREET
                                         GRETNA, LA 70053