JOHNSON, J.
*1237 Defendant/Appellant, Julius Hankton, appeals his convictions and sentences from the 24th Judicial District Court, Division "L". For the following reasons, we affirm Defendant's convictions. As to the sentences ordered on each of the six counts, we affirm the term of the sentences imposed, vacate the requirement that each sentence is to be served consecutively, amend the sentences to order that all sentences are to be served concurrently, amend the sentence on count one to delete the parole restriction; and, as amended, we affirm the sentences on each count. Additionally, we remand the matter with instructions.
FACTS AND PROCEDURAL HISTORY
On May 1, 2015, the Jefferson Parish District Attorney filed a bill of information charging Defendant with one count of possession with intent to distribute heroin, in violation of La. R.S. 40:966(A) (count one), four counts of possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (counts two, three, five, and six), and one count of possession of oxycodone, in violation of La. R.S. 40:967(C) (count four).[1] The six separate counts for which Defendant was charged all arose out of a single search warrant executed on March 19, 2015 at defendant's residence located at 1602 Clearview Parkway, Apartment A, in Metairie, Louisiana during which law enforcement seized a significant amount of heroin packaged for sale, drug paraphernalia, multiple cell phones, a large amount of cash, and four guns. Defendant pleaded not guilty to the counts at his arraignment on May 19, 2015.
On October 15, 2015, Defendant's motions to suppress statement and evidence were denied by the trial court. Trial commenced before a twelve-person jury on January 18, 2017.
At trial, Gregory Morrow, a recovering heroin addict, testified that in 2014 he was working with the Federal Bureau of Investigations (FBI) as a confidential informant. While working with the FBI, Morrow purchased heroin from Julius Hankton-Defendant-known to him as "Ju," on November 7, 19, and December 5, 2014, in quantities of one-half to one gram for which he would pay approximately $50 to $100. Morrow testified that he would call Defendant to set up the drug transaction and that his phone conversations were recorded by the FBI.[2] He explained that prior to meeting Defendant, he would be searched to verify that he did not have any drugs in his possession before receiving the money from law enforcement to purchase the drugs and would then engage in the hand-to-hand drug transaction with Defendant while under surveillance of law enforcement.
A video of the November 7, 2014 drug transaction between Defendant and Morrow was played for the jury. On the video, a vehicle driven by Defendant is shown pulling up to Morrow's vehicle where the *1238 passenger of Defendant's vehicle then hands Morrow a gram of heroin in exchange for $100. A second purchase made by Morrow on November 19, 2014, from Defendant was for half a gram of heroin and was also recorded on video; however, Morrow testified that the video did not capture Defendant, who had given him the heroin and was out of sight of the surveillance camera. Also, on December 5, 2014, Morrow made a third purchase of heroin from Defendant near the Brother Martin football field, which was not captured on video because he was instructed by Defendant to exit his vehicle and enter Defendant's vehicle where Defendant sold him the heroin out of sight from the surveillance camera positioned in Morrow's vehicle.
Stacey Taranto of the Jefferson Parish Sheriff's Office testified that in 2014 and 2015 she was a member of the narcotics unit working as a Task Force Officer with the FBI. Officer Taranto testified that the task force she participated in was a multi-jurisdictional unit comprised of members of local law enforcement and FBI agents in the greater New Orleans area who conducted narcotics investigations. She further explained that she conducted surveillance of the controlled buys testified to by Morrow and that, in March of 2015, she participated in the execution of a search warrant at Defendant's residence: 1602 Clearview Parkway, Apartment A, in Metairie, Louisiana.
Officer Taranto testified that during the November 19, 2014 controlled buy, she observed a silver BMW pull into the meeting location set up between Defendant and Morrow, where she observed a black male wearing a black sweatshirt with the letters "O-B-E-Y" written on it, exit the vehicle he was driving and conduct a hand-to-hand drug transaction with Morrow. She further explained that during her surveillance of the drug transactions conducted on November 19, 2014 and December 5, 2014, she was able to obtain the license plate numbers from the vehicles driven by Defendant and discovered that the vehicle used in November was registered to a female by the name of Jasmine Chaney-Defendant's girlfriend-who resided at 1602 Clearview Parkway, Apartment A, in Metairie, Louisiana, and the vehicle used in December 2014 was a rental car which had been rented under the name Jasmine Chaney. Officer Taranto testified that she performed a traffic stop of the vehicle following the December 5, 2014 drug transaction and confirmed Defendant as the driver of the vehicle. A search of the vehicle driven by Defendant revealed a black sweatshirt with the letters "O-B-E-Y" written on the front, a cell phone,[3] and two small bags of heroin.
Special Agent Christopher Bauer of the New Orleans Division of the FBI and member of the Violent Crimes Task Force participated in the controlled buy on November 19, 2014, during which he observed a silver BMW pull into the parking lot at the meeting location alongside Morrow's vehicle. He then observed a black male wearing a sweatshirt with the letters "O-B-E-Y" written across the front exit the BMW and interact with Morrow. Special Agent Bauer also confirmed his participation in the stop of the vehicle Defendant was driving after the December 2014 controlled buy. Special Agent Bauer indicated that Defendant was arrested at the time of the stop but was subsequently released.
*1239 Special Agent Bauer testified that subsequent to Defendant's release, a warrant was obtained for the search of Defendant's apartment. During the execution of the search warrant, Defendant was detained,[4] and a search of his pants[5] revealed 26 small plastic baggies containing heroin and eight pills that tested positive for oxycodone.[6] Additionally, a Glock 17 pistol, Glock 29, Glock 21, an AK-47 rifle, ammunition, multiple cell phones, a scale, and over $20,000 in cash were seized during the search of the master bedroom in which Defendant's pants were located. Upon discovery of the evidence, Defendant admitted his ownership of "all the stuff in the house."
FBI Special Agent Crystal Bender, also of the New Orleans Violent Crimes Task Force, likewise testified regarding the various monitored phone conversations between Morrow and Defendant during which the narcotics transactions were arranged, as well as the monitored video recordings of the controlled buys that took place. Agent Bender explained that surveillance of the Clearview apartment was also conducted during which Defendant was seen entering and exiting the residence. At one time, Defendant was seen exiting the apartment, approaching the driver of a white sedan, leaning inside the vehicle, and retreating back into the apartment after a couple of seconds.
Agent Bender further testified regarding a controlled buy between Defendant and an unnamed confidential informant on May 8, 2014, which was recorded on video surveillance and played for the jury. Agent Bender identified Defendant from the video and confirmed that in exchange for $100, the confidential informant received .31 grams of heroin. She explained that the quantity received was less than the amount paid. A recorded phone conversation between Defendant and the confidential informant was played during which Defendant explained that the reason it was "short" was because it was "bricked up," meaning it had been cut off of a "solid piece."
Sergeant Joshua Collins, an expert in the field of quantity, packaging, pricing, and distribution of narcotics, testified that the 26 bags of heroin individually packaged within a larger plastic bag weighing approximately 21 grams, the $20,000, and the scale all found in Defendant's apartment are indicative of street-level distribution.
David Cox, an expert in forensic analysis and identification of DNA, testified that a DNA sample was obtained from one of the firearms-the AK-47 rifle-found in Defendant's apartment which was consistent with being a mixture of DNA from two individuals, for which Defendant was excluded as a contributor. However, Mr. Cox testified that the findings of the testing did not necessarily indicate Defendant had never handled the AK-47, just that his DNA was not contained on the swab collected from the gun.
A stipulation was accepted by the parties that Sergeant Joel O'Lear, an expert *1240 in fingerprint examination and comparison, if called, would testify that he compared State's Exhibit 1-the latent fingerprint card of Defendant-to State's Exhibits 2 and 3-certified conviction packets for Defendant-and concluded that Defendant's fingerprints matched those contained on the certified conviction packets, establishing the prior felonies as alleged in counts two, three, five, and six.
At the conclusion of the trial, the following day, the jury found Defendant guilty as charged. Prior to sentencing Defendant on March 13, 2017, the trial court denied Defendant's oral motion for new trial. After a waiver of delays, the trial court sentenced Defendant on count one, to 50 years imprisonment at hard labor, with the first ten years to be served without benefit of probation, parole, or suspension of sentence; on each of counts two, three, five, and six, to 20 years imprisonment at hard labor to be served without benefit of probation, parole, or suspension of sentence; and on count four, to two years imprisonment at hard labor. The trial court further ordered Defendant's sentences on all counts to be served consecutively to each other.
On July 19, 2017, Defendant filed a motion for out-of-time appeal, which was granted by the trial court on July 24, 2017. The instant appeal follows.
ASSIGNMENTS OF ERROR
On appeal, Defendant alleges 1) the trial court improperly impinged upon his right of confrontation, and 2) the trial court imposed an unconstitutionally excessive sentence.
LAW AND ANALYSIS
Right of confrontation
In his first assignment of error, Defendant argues that because his primary accuser was a named cooperating informant, the trial court committed reversible error when it prohibited him from directly confronting and cross-examining Morrow-the informant-regarding the full scope of bias and inducement under which his testimony was offered to the jury. Thus, given the importance of the informant's testimony, Defendant maintains that the error was not harmless.
The State asserts that Defendant has failed to preserve this issue for appeal. Nevertheless, the State maintains Defendant was fully able to cross-examine Morrow on issues related to his credibility absent a few questions to which objections were properly sustained. Regardless, the State contends any alleged error claimed by Defendant would be harmless in this case.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to confront the witnesses against him. The Confrontation Clause of the Louisiana Constitution specifically and expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." La. Const. Art. I, § 16 ; State v. Robinson , 01-273 (La. 5/17/02), 817 So.2d 1131, 1135. Confrontation not only means the ability to confront the witnesses physically but also to secure for the opponent the opportunity of cross-examination, which is its main and essential purpose. Robinson , supra. Cross-examination is the principal way to test the believability and truthfulness of the testimony, and it has traditionally been used to impeach or discredit the witness. Id. ; State v. Williams , 04-608 (La. App. 5 Cir. 11/30/04), 889 So.2d 1093, 1100, writ denied , 05-0081 (La. 4/22/05), 899 So.2d 559.
Here, Defendant maintains that, although Morrow testified regarding three *1241 separate instances where Defendant sold him heroin, not all of the transactions were captured on video surveillance or by the surveilling officers themselves, and therefore, the jury was required to rely on Morrow's uncorroborated testimony. Thus, given the importance of Morrow to the State's case, Defendant asserts the trial court erred in precluding him from cross-examining Morrow regarding the payments he received from law enforcement for his participation as an informant and the extent of the uncharged criminal wrongdoing offered to him in exchange for his cooperation.
Specifically, Defendant sets forth two instances during his cross-examination of Morrow where the trial court allegedly impinged on his Sixth Amendment right. The first is the following exchange during which he was allegedly precluded from questioning Morrow regarding other narcotics transactions he had previously engaged in-other than those in this case-and which law enforcement elected to "look the other way[:]"
DEFENSE: So - and by the way, not only were you not arrested for selling heroin, but you were paid money; right?
MORROW: Yes.
DEFENSE: So the Government pays you - how much money did they pay you?
MORROW: Um, two or three hundred dollars a time; something like that.
DEFENSE: I'm in the wrong business. So every time you go and do something for them, you get paid two hundred dollars; and you can buy and use heroin, and sell heroin, and never worry about being arrested by them; right? Have you been arrested by them for any of your drug selling or using since this all began?
MORROW: No, because nothing was around them?
DEFENSE: What do you mean "nothing was around them"?
MORROW: I said nothing I did was around them, so they didn't have any direct knowledge or any direct link to me using. They knew that -they figured that it was using -
DEFENSE: They figured you were using, but no one ever saw like -what about the other buyers that you bought from, did you give them their names, and make other buys?
STATE: I'm going to object to anything beyond the scope of -of this trial.
DEFENSE: Judge, they decided to put this man on the stand.
COURT: I know, but we're only concerned about this case; so I'll sustain it as to that -
DEFENSE: But this case isn't even about this man. And that's the -
COURT: Mr. Smith, --
DEFENSE: Okay, I'm sorry, Judge.
COURT: I make a-
DEFENSE: I'm sorry.
COURT: --I make a ruling, we don't argue. Okay?
DEFENSE: Okay, you're right.
COURT: So let's move on.
DEFENSE: I apologize.
The second alleged cross-examination restriction Defendant alleges is the trial court's prohibition on his inquiries to Morrow concerning the total amount of money he received from law enforcement for his cooperation in other uncharged narcotics trafficking engaged in by Morrow that did not involve the instant case:
DEFENSE: So just -how much money did you make in 2014, in income, from the Government paying you?
MORROW: If I said it - *1242 STATE: I'm going to object. As it related to his case? I think that may be relevant, but -
DEFENSE: Okay, as it-okay as it relates to this case?
COURT: As it relates to this case -it's a legal (inaudible words).
MORROW: If I had to say a number, I'd be lying. I'm not sure of the exact number, the F.B.I. knows that, it's written down somewhere.
DEFENSE: But wait a second, you only testified that this happened November -the only time -every time you did something with Ju [defendant], it was recorded; right?
MORROW: Yes.
DEFENSE: So, we've only heard about 7-November 7, November 19th, December 5th; that would only be six hundred dollars; two hundred times three. Where is the other money coming from?
MORROW: What other money?
DEFENSE: Well you couldn't even tell me how much money you made. It seems clear if you get two hundred dollars every time you did it, and you only testified about three times.
MORROW: I'm not sure of the exact number of how many buys that were done.
DEFENSE: So are you telling us now that you've bought more from Ju [defendant] now?
MORROW: No.
DEFENSE: But what other buys are you talking about then, from other people?
STATE: Objection, Judge, it -
DEFENSE: Okay, I'll -
COURT: Sustained.
Defendant claims the aforementioned exchanges illustrate an egregious denial of his fundamental right to confrontation. He maintains that Morrow was a critical witness against him; and without Morrow, there would have been "a much less compelling case of guilt." Defendant comes to the conclusion that the trial court's restrictive rulings concerning additional unrelated narcotics transactions with individuals other than Defendant and the money received for those dealings were not harmless beyond a reasonable doubt.
In order to preserve an issue for appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. La. C.Cr.P. art. 841. It is well-established that a defendant is limited to the grounds for objection articulated at trial and a new basis for an objection may not be raised for the first time on appeal. State v. Cooks , 97-0999 (La. 9/9/98), 720 So.2d 637, 644, cert. denied , 526 U.S. 1042, 119 S.Ct. 1342, 143 L.Ed.2d 505 (1999) ; State v. Johnson , 03-620 (La. App. 5 Cir. 10/28/03), 860 So.2d 180, 187, writ denied , 03-3171 (La. 3/19/04), 869 So.2d 849. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling on a favorable verdict then resorting to appeal on errors that might easily have been corrected by an objection. State v. Johnson , supra. Since Defendant did not object to the aforementioned alleged restrictions on his cross-examination of Morrow or to any testimony on the ground that it violated the confrontation clause of the United States or Louisiana Constitutions, we find he is precluded from raising the issue on appeal. See State v. Taylor , 04-346 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 594-95.
*1243 Excessive Sentence
In his second assignment of error, Defendant maintains that his sentence of 132 years imprisonment is unconstitutionally excessive. He argues that with the exception of his two-year sentence imposed on count four (possession of oxycodone), he received the maximum available sentences on all other counts, which were then ordered by the trial court to be served consecutively for a total of 132 years-a virtual life sentence-constituting a needless and purposeless infliction of pain and suffering. Defendant avers that his consecutive sentences result in a plainly unconstitutionally excessive sentence. He notes that he was 25 years old at the time he committed the instant crimes, is a father of a young child, and his crimes of conviction are non-violent possession offenses warranting remand of this matter for resentencing.
The State asserts that even if this Court were to extend an excessiveness review to the issue of the sentences imposed on each individual count, no relief would be warranted because the trial court did not abuse his broad sentencing discretion.
The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. State v.Nguyen , 06-969 (La. App. 5 Cir. 4/24/07), 958 So.2d 61, 64, writ denied , 07-1161 (La. 12/7/07), 969 So.2d 628. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. Id.
According to La. C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. Nguyen , 958 So.2d at 64 ; State v. Taylor , 06-839 (La. App. 5 Cir. 3/13/07), 956 So.2d 25, 27, writ denied , 06-0859 (La. 6/15/07), 958 So.2d 1179 (citing State v. Lobato , 603 So.2d 739, 751 (La. 1992) ; State v. Pearson , 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 655-56 ).
In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Allen , 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880. However, there is no requirement that specific matters be given any particular weight at sentencing. State v. Tracy , 02-0227 (La. App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied , 02-2900 (La. 4/4/03), 840 So.2d 1213.
At the time of the charged offenses, the penalty for possession with intent to distribute heroin, a violation of La. R.S. 40:966(A), carried a term of imprisonment at hard labor for "not less than ten nor more than fifty years, at least ten of which shall be served without benefit of probation or suspension of sentence," and the penalty for possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1, carried a term of imprisonment at hard labor for "not less than ten nor more than twenty years without benefit of probation, parole, or suspension of sentence."
The trial court sentenced Defendant to the maximum allowable sentences on count one (possession with intent to distribute heroin) and on each of counts two, three, five, and six (possession of a firearm by a convicted felon). Specifically, Defendant *1244 received a 50-year sentence, with ten years to be served without benefit of probation, parole, or suspension of sentence on count one and 20-year sentences without benefit of probation, parole, or suspension of sentence on each of counts two, three, five, and six. The trial judge gave the following reasons for the sentences imposed:
All right. Mr. Hankton, I'm familiar with this particular case. I was the sitting judge. I have reviewed the Code of Criminal Procedure Article 891 of the sentencing guidelines, and find under A1 that if there's an undue risk, that during the period of suspended sentence or probation the defendant would commit another crime. And that two, the defendant is in need of a correctional treatment of custodial environment that can be provided most effectively by his commitment to an institution and that any lesser sentence would deprecate the seriousness of this offense. Based on the evidence that I saw of the multiple dealings, in what was uncovered at your house, along with the guns and the heroin, the Court --
All right, on count one, based on the evidence that I saw and what I know and what I've seen in this particular case, the Court is going to sentence you [....]
When an appellate court is reviewing a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker , 00-3200 (La. 10/12/01), 799 So.2d 461, 462 (per curiam ).
As will be further explained, we find the trial court did not abuse its discretion in imposing the maximum sentences on each of counts one, two, three, five, and six when considering the nature of the crime, as well as the nature and background of Defendant.[7]
First, Defendant stipulated to his prior 2012 convictions for aggravated battery and possession of cocaine. Past records of drug offenses weigh heavily in the decision to uphold the imposition of maximum sentences. State v. Jones , 33,111 (La. App. 2 Cir. 3/1/00), 754 So.2d 392, writ denied , 00-1467 (La. 2/2/01), 783 So.2d 385. Second, Defendant had eight oxycodone pills, 26 baggies of heroin, a scale, four firearms, and over $20,000 in cash in his apartment in which his girlfriend and their four-year-old child were present. Thus, we find Defendant illustrated a disregard for the welfare of others by keeping dangerous narcotics and loaded weapons in a house with children. See State v. Payne , 10-47 (La. App. 5 Cir. 1/25/11), 59 So.3d 1287, writ denied , 11-0387 (La. 9/16/11), 69 So.3d 1141.
Additionally, when considering the seriousness of the offense of La. R.S. 14:95.1, we note that it was committed while Defendant was simultaneously in possession of a quantity of drugs. The Louisiana Supreme Court has found generally in considering laws that make it illegal to possess a firearm while also possessing a controlled dangerous substance, "there is *1245 a rational relationship between the statute's scope, i.e., making it a felony for a person to possess a firearm in connection with a drug offense, even a misdemeanor drug offense, and its legitimate state purpose of preventing drug-related violence." State v. Blanchard , 99-3439 (La. 1/18/01), 776 So.2d 1165. This Court has drawn a similar conclusion with respect to drug violations that involve guns in State v. Williams , 98-1006 (La. App. 5 Cir. 3/30/99), 735 So.2d 62, writ denied , 99-1077 (La. 9/24/99), 747 So.2d 1118 by stating,
The aim of the legislature in enacting the present statute was to criminalize possession and/or use of a dangerous weapon, including a firearm, in order to prevent those engaged in drug use and distribution from engaging in the violent behavior endemic to the trade. This statute was enacted not solely for the protection of police officers, as Defendant contends, but also for the protection of the general public.
Further, the evidence at trial established that Defendant had an ongoing drug distribution business involving the sale of heroin for a profit, in quantities inconsistent with personal use. In State v. Williams , 16-600 (La. App. 5 Cir. 6/29/17), 224 So.3d 1194, 1198, this Court upheld the defendant's maximum enhanced sentence of 20 years imprisonment for the defendant's conviction of simple possession of heroin, with a predicate conviction for possession of heroin. This Court found that the nature of the defendant's crime warranted the sentence of 20 years, noting that although the defendant was convicted of simple possession, the facts of the case and the defendant's history suggested his involvement in heroin distribution.
Also, Defendant's possession of four loaded guns while in possession of a significant quantity of heroin could have conceivably led to a violent outcome or injury to members of the public; thereby, rendering the nature of the single offense of La. R.S. 40:966(A) not inconsequential for sentencing purposes.
Accordingly, the record amply justifies the sentences imposed by the trial court and the individual sentences are not grossly disproportionate to the offenses or impose needless and purposeless pain and suffering. Considering that Defendant's conduct constituted a threat to public safety, his prior criminal record for drug-related activity and violence, and the fact that the trial court was of the opinion that there was an undue risk that Defendant would commit another crime and is in need of correctional treatment, we find the individual sentences imposed do not shock this Court's sense of justice and the trial court did not abuse its discretion in imposing a 50-year sentence on count one and 20-year sentences on each of counts two, three, five, and six. However, we note there is an issue with the consecutive nature imposed on Defendant's sentences. Therefore, we will review the consecutive nature of Defendant's sentences as part of his claim that the sentences imposed are unconstitutionally excessive.[8]
In determining whether sentences are excessive, this Court should consider, among other things, whether the convictions arise out of a single course of criminal conduct. State v. Ortego , 382 So.2d 921 (La. 1980), cert. denied , 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). When two or more convictions arise from the same act or transaction, or constitute parts *1246 of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all shall be served consecutively. La. C.Cr.P. art. 883.[9] In other words, if the trial court elects to impose consecutive sentences for crimes arising out of the single course of conduct, it must articulate the reasons it feels consecutive sentences are necessary. Cornejo-Garcia , 90 So.3d at 465 ; State v. Blanchard , 03-612 (La. App. 5 Cir. 11/12/03), 861 So.2d 657, 664, writ denied , 03-3389 (La. 10/15/04), 883 So.2d 1045. According to the record in this case, since Defendant's convictions arose from a single event-the search warrant executed on his Metairie residence on March 19, 2015-under La. C.Cr.P. art. 883, there was a presumption in favor of concurrent sentences. The trial judge, however, did not articulate any particular reasons or identify any specific factors particular to Defendant for requiring that his sentences be served consecutively.
Considering sentences imposed for similar crimes in this and other courts, the following jurisprudence indicates to us that the consecutive nature of the sentences imposed upon Defendant herein-resulting in a total period of incarceration of 132 years, which is greater than a life sentence reserved for the most violent of crimes-is unconstitutionally excessive and shocks our sense of justice. Specifically, the following jurisprudence shows a range of sentences for a total period of incarceration imposed for similar offenses for which Defendant was convicted.
In State v. Evans , 09-477 (La. App. 5 Cir. 12/29/09), 30 So.3d 958, writ denied , 10-363 (La. 3/5/11), 61 So.3d 653, this Court upheld a 45-year habitual offender sentence where the defendant was convicted of possession of cocaine with intent to distribute. In State v. Collins , 09-283 (La. App. 5 Cir. 12/8/09), 30 So.3d 72, writ denied , 10-34 (La. 9/3/10), 44 So.3d 696, this Court considered the defendant's four prior felony convictions and upheld a 35-year sentence for possession of heroin with the intent to distribute from a hotel room. In State v. Calway , 98-2061 (La. App. 4 Cir. 11/17/99), 748 So.2d 1205, writs denied , 00-3396 (La. 8/24/01), 795 So.2d 342 and 04-1260 (La. 3/18/05), 896 So.2d 998, the Fourth Circuit upheld a 60-year sentence for possession of cocaine with the intent to distribute, finding that the defendant's prior convictions for theft, burglary, possession of narcotics paraphernalia, possession of cocaine, and possession of marijuana justified the imposition of the maximum sentence. In State v. Cann , 471 So.2d 701 (La. 1985), the trial court sentenced the defendant to five years on a marijuana distribution count and to one 30-year and two 15-year sentences on cocaine distribution counts. The defendant had several arrests and convictions as an adult for drug-related offenses and sold drugs on three occasions to an undercover officer within a five-week period. Although the supreme court found that none of the sentences were individually excessive, under the circumstances of that case, it found the sentences to be excessive in that they were ordered to be served consecutively *1247 and ordered the sentences to be served concurrently.
While the trial court may certainly consider the full context of the current charges, as well as many other factors in sentencing a defendant, it nevertheless is important to focus upon the facts of that particular record in first rendering the sentence and then upon review for constitutional excessiveness. In light of the record before us and the jurisprudence outlined above, we find the consecutive nature of Defendant's sentence, essentially exposing him to a total of 132 years of incarceration, shocks our sense of justice and is grossly disproportionate to the severity of the crime. Moreover, it imposes an undue burden on the taxpayers of the state, who must feed, house, and clothe Defendant for potentially the rest of his natural life. As this 25-year-old man ages, these costs will only increase due to the need for geriatric health treatments. See State v. Bruce , 11-991 (La. App. 5 Cir. 10/30/12), 102 So.3d 1029, writ denied , 12-2568 (La. 4/16/13), 112 So.3d 839. The crimes with which Defendant was charged carry mandatory minimum sentences, indicating that the Legislature is deeply concerned with both heroin trafficking and guns in the hands of convicted felons.[10] Furthermore, the amount of heroin seized, during execution of the search warrant, as well as the nature of its packaging, the accouterments of trafficking, and the four weapons seized, all indicate that Defendant was a serious drug dealer. The ongoing nature of Defendant's activities is further evidenced by the four separate predicating buys surveilled by law enforcement. A lengthy period of incarceration is justified and well within the trial court's broad sentencing discretion. Separation of Defendant from society for a significant period of time assures the community of safety from both his trafficking of a deadly drug and from his use of the four firearms found in his possession.
With these factors in mind, while sentencing Defendant to the maximum term for five of the six charged offenses does not constitute cruel and unusual punishment, ordering that the sentences be served consecutively for a full 132-year term does.[11] The record contains scant evidence to support a finding that this case involved the most serious violation of the offenses and the worst type of offender. Maintaining each sentence rendered on the six counts for which Defendant was convicted, while vacating the consecutive nature of the six terms and ordering the six *1248 sentences to be served concurrently, does not shock our sense of justice nor do we find it unconstitutionally excessive.[12] By removing the consecutive nature of the terms, we find the sentences imposed are supported by the jurisprudence, meet all of the societal goals of incarceration for Defendant without imposing an undue financial burden on the state, are more proportionate to the crimes committed in the instant case, and will eliminate the "purposeful imposition of pain and suffering" element that is prohibited by the federal and state constitutions.
Accordingly, we affirm Defendant's convictions on all six counts. Because the sentences imposed for Defendant's convictions all arose out of the same search warrant executed at the Defendant's Metairie residence, and were based on the same transaction or single course of conduct creating a presumption in favor of concurrent sentences under La. C.Cr.P. art. 883, we find that the aggregate of the sentences is unconstitutionally excessive and must be amended to provide that Defendant's sentences are to be served concurrently rather than consecutively. Therefore, we affirm in part, vacate in part, and amend in part the sentences imposed upon Defendant for the convictions on each of the six counts. Specifically, we affirm the term of the sentences imposed on each count, vacate the consecutive nature of the sentences, and amend the sentences to include an order that the sentences on each count are to be served concurrently.
Errors Patent Review
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990).
First, Defendant received an illegal sentence on count one. Defendant was convicted on count one of possession with intent to distribute heroin. La. R.S. 40:966(B)(4)(a) provides that the penalty for this offense is "imprisonment at hard labor for not less than ten years nor more than fifty years, at least ten of which shall be served without benefit of probation or suspension of sentence." In the present case, the trial court sentenced Defendant to 50 years imprisonment at hard labor with the first ten years to be served without benefit of probation, parole , or suspension of sentence. The statute does not provide for the prohibition of parole.
La. C.Cr.P. art. 882(A) provides this Court with the authority to amend Defendant's sentence by deleting the parole restriction to reflect that the first ten years of Defendant's 50-year sentence on count one only be served without benefit of probation or suspension of sentence. See State v. Dee , 09-712 (La. App. 5 Cir. 2/23/10), 34 So.3d 892, 903, writ denied , 10-0705 (La. 10/29/10), 48 So.3d 1097. Moreover, when a sentencing error involves the imposition of restrictions beyond what the legislature has authorized in the sentencing statute, the Louisiana Supreme Court has ruled that the Courts of Appeal "should not rely on La. R.S. 15:301.1(A) to correct the error as a matter of law but should correct the sentence on its own authority under La. C.Cr.P. art. 882 to correct an illegal sentence 'at any time.' "
*1249 State v. Sanders , 04-0017 (La. 5/14/04), 876 So.2d 42 (per curiam ).
Accordingly, we delete the parole restriction imposed with regard to the sentence on count one, reflecting that the first ten years of the sentence is to be served only without the benefit of probation or suspension of sentence and affirm the sentence as amended. We also order the 24th Judicial District Court Clerk of Court to transmit notice of this amended sentence to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department. See State v. Richard , 12-310 (La. App. 5 Cir. 4/24/13), 115 So.3d 86, 94, writ denied , 13-1220 (La. 12/2/13), 126 So.3d 497.
It is further noted that in addition to this Court deleting the parole restriction on the commitment with respect to count one, we are remanding the matter for the trial court to note the proper restrictions and applicable years of those restrictions in conjunction with the concurrent sentences, as there was a parole restriction error in the commitment and the Louisiana Uniform Commitment Order (UCO) of the original sentence.[13] This Court has previously remanded a case for correction of the commitment and the UCO in its error patent review. See State v. Lyons , 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied , 14-481 (La. 11/7/14), 152 So.3d 170 (citing State v. Long , 12-184 (La. App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142 ). Accordingly, we remand this case for correction of the commitment and UCO regarding the total number of years to be served without benefits in conjunction with this Court's amendment of Defendant's sentences. We further direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected commitment and UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. See Long , supra (citing La. C.Cr.P. art. 892(B)(2) ).
DECREE
For the foregoing reasons, based upon our review of the record before us, Defendant's convictions are affirmed on all six counts. Further, as to the sentences imposed on each of the six counts for which Defendant was convicted, we affirm in part; vacate in part; amend in part; and, affirm as amended. Specifically, we affirm the term of the sentences imposed on each count; vacate the consecutive nature of the sentences; amend the sentences to include an order that the sentences on each count are to be served concurrently; and amend the sentence on count one to delete the parole restriction; and, as amended, we affirm the sentences. We also remand this matter with instructions for correction of the commitment and the UCO pursuant to the errors patent discussion above.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED; REMANDED FOR CORRECTION OF THE UNIFORM COMMITMENT ORDER

Jasmine Chaney was also charged in the same bill of information with possession of tramadol without a prescription, in violation of La. R.S. 40:1238.1 (count seven).

These phone conversations were introduced into evidence and played for the jury.

Call logs and text messages recovered from the cell phone belonging to Defendant further confirmed the communications between Morrow and Defendant with respect to the controlled buys.

Jasmine Chaney and a four-year-old child were also in the apartment at the time.

At the time law enforcement officers entered the apartment, Defendant was naked and asked the officers to retrieve his pants from his upstairs bedroom.

Michael Cole, forensic chemist for the Jefferson Parish Sheriff's Office Crime Lab, was qualified as an expert in the analysis and identification of controlled dangerous substances and testified that the 26 baggies tested positive for heroin with a gross weight of 21 grams. He further testified that the pills seized from the larger plastic bag taken from Defendant's pants pocket were found to contain oxycodone.

Defendant is not challenging the excessiveness of his two-year sentence on count four, as he notes that count four-possession of oxycodone-is the only sentence for which he did not receive a maximum or near maximum sentence. Nonetheless, Defendant's sentence on count four is not unconstitutionally excessive as it is three years less than the maximum five-year sentence that could have been imposed pursuant to La. R.S. 40:967(C)(2). See also State v. Daniels , 15-148 (La. App. 3 Cir. 8/5/15), 215 So.3d 761, where, after considering several mitigating factors, such as the defendant's young age and tenth-grade education, the trial court sentenced the defendant to four years imprisonment at hard labor, a sentence which was not found to be excessive by the Third Circuit.

See , State v. Hester , 99-426 (La. App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied , 99-3217 (La. 4/20/00), 760 So.2d 342, where this Court reviewed the constitutional excessiveness of a consecutive sentence.

The Louisiana Supreme Court has recognized that although Louisiana law favors concurrent sentences for crimes committed as a part of a single transaction, a trial court retains discretion to impose consecutive penalties in cases where the offender's past criminal acts, violence in the charged crimes, or other circumstances in his background or in the commission of the crimes justify treating him as a grave risk to the safety of the community. State v. Williams , 445 So.2d 1171, 1182 (La. 1984). See also State v. Harris , 11-626 (La. App. 5 Cir. 11/27/12), 105 So.3d 914, 935 ; State v. Williams , 08-556 (La. App. 5 Cir. 1/13/09), 8 So.3d 3, 9, writ denied , 09-330 (La. 11/6/09), 21 So.3d 298 ; State v. Cornejo-Garcia , 11-619 (La. App. 5 Cir. 1/24/12), 90 So.3d 458, 465.

At the time defendant was charged with possession with intent to distribute heroin, La. R.S. 40:966(B)(4)(a) provided a mandatory minimum sentence of ten years to be served without benefit of probation or suspension of sentence (since the 2017 amendments, La. R.S. 40:966(B)(3) currently provides a mandatory minimum sentence of not less than five years); La. R.S. 14:95.1(B) provides a mandatory minimum sentence of five years at hard labor without benefit of probation, parole, suspension of sentence, and be fined not less than one thousand dollars for a violation of La. R.S. 14:95.1(A), illegal possession of a firearm by a convicted felon; and, La. R.S. 40:967(C), at the time defendant was charged with possession of oxycodone, provided for a mandatory minimum sentence of two years, with or without hard labor.

As previously discussed, each of the six counts with which Defendant was charged in the instant bill of information arose out of a single event, i.e. , the execution of a single search warrant at his Metairie apartment on March 19, 2015. Defendant was not charged in the bill of information with either the underlying controlled buys upon which the search warrant application was based or with the heroin charge arising out of the traffic stop; at the time of trial, those charges were still pending in Orleans Parish. Thus, there was a presumption in favor of ordering Defendant's sentences to run concurrently under La. C.Cr.P. art. 883.

At the time of the charged offenses, the maximum penalty allowed under La. R.S. 40:966(B)(4)(a) for possession with intent to distribute heroin was 50 years at hard labor, at least ten of which shall be served without benefit of probation or suspension of sentence, and the maximum penalty allowed for illegal possession of a firearm by a convicted felon under La. R.S. 14:95.1 was 20 years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.

For example, the trial court sentenced Defendant to a total term of imprisonment of 132 years. Of the 132 years, the commitment and the UCO provide that "90 years" are to be served without benefit of parole, probation, or suspension of sentence. However, the total time Defendant would have served for his sentence without benefit of parole, probation, or suspension of sentence was incorrect due to the noted illegal parole restriction imposed on count one and would have needed to be corrected to accurately provide that only 80 years of Defendant's total sentence was to be served without benefit of parole, probation, or suspension of sentence.